HOPKINS RODEN CROCKETT
 HANSEN & HOOPES, PLLC
Gregory L. Crockett, ISB No. 1640
Sean J. Coletti, ISB No. 7199
Dillon Erickson, ISB No. 10312
428 Park Avenue
Idaho Falls, ID  83405-1219
Telephone:  208-523-4445
Facsimile:  208-523-4474
Email:  seancoletti@hopkinsroden.com
Email:  dillonerickson@hopkinsroden.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WCS CONSULTING, LLC, an Idaho Limited Liability Company, | |
| Plaintiff, | Case No.: _____ |
| vs. | COMPLAINT |
| DANIEL SHAW, an individual; ERNEST & YOUNG, LLP; ECOMMQUEST, INC.; and DOES 1-10, inclusive, | |
| Defendants. | |

COMES NOW the Plaintiff, by and through its attorneys, and for a cause of

action against Defendants, complains and alleges as follows:

1.     Plaintiff WCS Consulting, LLC ("WCS") is, and at all times mentioned

herein was, a limited liability company duly organized and existing under the laws of the state of

Idaho, with a principal place of business located at 390 E. Corporate Dr. #105, Meridian, Idaho

83642 and is a consulting firm.

COMPLAINT - 1

2.      WCS is informed and believes and thereon alleges, that Defendant Ernst & Young, LLP ("EY") is, at all times mentioned herein was, a limited liability partnership duly organized and existing under the laws of Delaware, with a principal place of business located at 5 Times Square, New York, NY 10036.

3.      ECOMMQUEST, INC. ("ECOMMQUEST") is, at all times mentioned herein was, a corporation duly organized and existing under the laws of the state of Georgia, with a principal place of business located at 4151 Ashford Dunwoody Rd, Ste. 200, Atlanta, GA 30319.

4.      Daniel Shaw ("Shaw") is, at all times mentioned herein was, an individual residing in the County of Allegheny, Commonwealth of Pennsylvania.

5.      WCS does not know the true names or capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1 through 10, inclusive, and, according, is suing them by these fictitious names. When the true names and capacities of such defendants have been ascertained, WCS will amend the complaint to reflect their true names and capacities. WCS is informed and believes, and thereupon alleges, that each such fictitiously named defendant is in some manner legally responsible for each of the acts, events, happenings, and occurrences described in this complaint, and proximately caused injures and damages to WCS, as alleged herein.

## JURISDICTION AND VENUE

6.      In the Confidentiality and Proprietary Rights Agreement (Exhibit A), Defendant Daniel Shaw agreed that "This Agreement, for all purposes, shall be construed in accordance with the laws of Idaho without regard to conflicts-of-law principles.  Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal

COMPLAINT - 2

court located in the state of Idaho. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue."

7.     The Court has personal jurisdiction over all the Defendants under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and Idaho Code § 5-514. The causes of action against the Defendants arise out their acts and omissions that occurred primarily and substantially in, or were intentionally or purposefully directed towards, the State of Idaho, including Shaw's breach of a contract executed in Idaho, EY's and ECOMMQUEST's knowing and intentional tortious interference with and inducement to breach contracts executed in the State of Idaho, and EY's and ECOMMQUEST's knowing and intentional unfair competition with a business principally located in the State of Idaho.

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds $75,000.

8.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and (3) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and because Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTS

9.     WCS is engaged in the business of development and implementation of digital supply chain solutions throughout the United States.

10.    EY is one of the largest professional services firms in the world.

11.    ECOMMQUEST is a leading recruiter for accounting firms, consulting

firms, and technology firms providing three key client services: contract staffing and direct or permanent placement and managed resource programs.

12.     WCS is informed and believes, and thereupon alleges, that at all times mentioned herein, each of the defendants was the agent, servant, employee, partner, and/or joint venturer of each of the other defendants, and, in doing the things herein mentioned, was acting within the time, place, purpose, course, and scope of such agency, service, employment, partnership, and/or joint venture, and/or with the knowledge, permission, consent, and/or ratification of each of the other defendants.

13.     On or about January 18, 2017, Shaw entered into a Confidentiality and Proprietary Rights Agreement with WCS, a copy of which is attached hereto as Exhibit A (the "Agreement"). The Agreement restricted the disclosure of Confidential Information, the definition of which included "...staffing information, personnel information, employee lists..."

14.     On or about, August 15, 2018, Shaw resigned from his employment at WCS.

15.     Shaw began working for EY shortly thereafter.

16.     WCS is informed and believes, and thereupon alleges that in violation of the Confidentiality and Proprietary Rights Agreement, Shaw unlawfully disclosed confidential information in the form of staffing information, personnel information and employee lists to both ECOMMQUEST and EY.

17.     WCS is informed and believes, and thereupon alleges that ECOMMQUEST and EY unlawfully utilized that confidential information in order to systematically contact, recruit and poach and induce employees of WCS to leave their employment with WCS for the purpose of destroying an integral part of WCS business.

COMPLAINT - 4

18.    WCS is informed and believes, and thereupon alleges that Shaw disclosed the confidential employee information, ECOMMQUEST would then contact the WCS employee with the intent to poach them from WCS and become employees of EY.

19.    WCS is informed and believes, and thereupon alleges that in exchange for Shaw's disclosure of personnel information and employee lists, Shaw was compensated five thousand dollars ($5,000.00) for each employee that was recruited from WCS and began employment at EY.

20.    WCS is informed and believes, and thereupon alleges that as of the date of this Complaint, at least fourteen (14) employees of WCS have been contacted using information obtained from Shaw in an attempt to poach them from WCS.

## Count I – Breach of Contract

### (as to Defendant Daniel Shaw)

21.    WCS refers to, realleges and incorporates by reference the allegations of Paragraphs 1 through 20, as though set forth fully herein.

22.    On or about January 18, 2017, Shaw entered into an Agreement with WCS. The Agreement included a Confidentiality and Proprietary Rights Agreement which restricted the disclosure of Confidential Information, the definition of which included "...staffing information, personnel information, employee lists..."

23.    On or about, August 15, 2018, Shaw resigned from his employment at WCS.

24.    Shaw began working for EY shortly thereafter.

25.    WCS is informed and believes, and thereupon alleges that in violation of the Confidentiality and Proprietary Rights Agreement, Shaw unlawfully disclosed confidential

COMPLAINT - 5

information in the form of staffing information, personnel information and employee lists to both ECOMMQUEST and EY.

26.     WCS is informed and believes, and thereupon alleges that ECOMMQUEST and EY unlawfully utilized that confidential information in order to contact the employee with the intent to poach them from WCS and become employees of EY.

27.     WCS is informed and believes, and thereupon alleges that in exchange for Shaw's disclosure of personnel information and employee lists he was compensated five thousand dollars ($5,000.00) for each employee that was recruited using unlawfully disclosed information and began working at EY.

28.     Shaw has been and remains in breach of the Confidentiality and Proprietary Rights Agreement, having disclosed confidential information in the form of staffing information, personnel information and employee lists to both ECOMMQUEST and EY.

29.     Defendant Shaw has caused WCS to incur damages in an amount not less than $950,000 as a direct result of the breach of the Agreement.

## COUNT II – Common Law Unfair Competition

### (as to Defendants EY and ECOMMQUEST)

30.     WCS refers to, realleges and incorporates by reference the allegations of Paragraphs 1 through 29, as though set forth fully herein.

31.     WCS is informed and believes, and thereupon alleges that EY and ECOMMQUEST engaged in the targeted solicitation of WCS employees.

32.     WCS is informed and believes, and thereupon alleges that EY and ECOMMQUEST practices are unfair and unethical as they obtained trade secrets and confidential information in the form of employee lists and contact information from Shaw and

COMPLAINT - 6

utilized the unlawfully obtained trade secrets to solicit employees.

33.     WCS is informed and believes, and thereupon alleges that EY and ECOMMQUEST carried out these actions with the intent to cause harm to WCS.

34.     WCS is informed and believes, and thereupon alleges that EY and ECOMMQUEST compensated Shaw for the disclosure of this information in the amount of five thousand dollars ($5,000.00) for each employee that was recruited using unlawfully disclosed information and began working at EY.

35.     WCS is informed and believes and thereupon alleges that EY and ECOMMQUEST engaged in a systematic pattern of activities to induce employees of WCS to leave employment with WCS and begin working at EY for the purpose of destroying an integral part of WCS's business.

## COUNT III – Tortious Interference With Contractual Relations

### (as to Defendants EY and ECOMMQUEST)

36.     WCS refers to, realleges and incorporates by reference the allegations of Paragraphs 1 through 35, as though set forth fully herein.

37.     WCS is informed and believes, and thereupon alleges that ECOMMQUEST induced Shaw to breach the Agreement by directing Shaw to misappropriate WCS confidential, proprietary, and trade secret information to solicit WCS's employees.

38.     WCS is informed and believes, and thereupon alleges that ECOMMQUEST induced Shaw to breach the Agreement by soliciting WCS's employees to work for EY intentionally harming WCS' contractual relationships with those employees.

39. WCS is informed and believes, and thereupon alleges that ECOMMQUEST and EY willfully and/or recklessly interfered with WCS's existing contractual relations with WCS's employees.

### COUNT IV – Violation of Idaho's Trade Secrets Act

### (Idaho Code §§ 48-801 et seq.)

#### (as to all Defendants)

40. WCS refers to, realleges and incorporates by reference the allegations of Paragraphs 1 through 39, as though set forth fully herein.

41. WCS utilizes its trade secret information, including its pricing information, payroll information, staffing information, personnel information and employee lists, along with its employees to derive actual independent economic value from its clients and customers, which is not known to or readily ascertainable by WCS' competitors.

42. WCS took reasonable efforts to preserve its proprietary and trade secret information by requiring all employees to enter into a confidentiality and proprietary rights agreement, consistent with the Agreement, as a consideration for the employees' employment.

43. WCS is informed and believes, and thereupon alleges that, Shaw, ECOMMQUEST and EY misappropriated WCS' proprietary and trade secret information, in their systematic pattern of activities to induce employees of WCS to leave employment with WCS and begin working at EY for the purpose of destroying an integral part of WCS's business.

44. Shaw had a duty to maintain the secrecy of WCS' proprietary and trade secret information under the Agreement.

45. WCS is informed and believes, and thereupon alleges that, Shaw's misappropriation of WCS' proprietary and trade secret information and the subsequent

COMPLAINT - 8

exploitation of the information by ECOMMQUEST and EY was intentional, willful, and malicious.

## ATTORNEY'S FEES

46.    WCS refers to, realleges and incorporates by reference the allegations of Paragraphs 1 through 45, as though set forth fully herein.

47.    That it has become necessary for Plaintiff to employ counsel to pursue its claims herein, and it has engaged the firm of Hopkins Roden Crockett Hansen & Hoopes, PLLC for that purpose and agreed to pay the firm a reasonable fee, for which Plaintiff is entitled to be reimbursed by the Defendants in accordance with Idaho Code §§ 12-120(3) and 12-121 or other applicable provisions of the Idaho Code or United States Code.

WHEREFORE, Plaintiff prays the judgment, order and decree of this Court, as follows:

1.    That judgment be entered for Plaintiff and against Defendants as prayed for herein;

2.    That Plaintiff be awarded its monetary and compensatory damages of at least $950,000, plus interest, as may be proven at trial;

3.    That Plaintiff be awarded such further punitive and exemplary damages in an amount to be determined at trial;

4.    That Plaintiff be awarded an injunction (a) against Shaw preventing Shaw, and any others acting at his direction, from further disclosing any of WCS's trade secret information to ECOMMQUEST and EY; (b) preventing EY from utilizing any of WCS's trade

COMPLAINT - 9

secret information that was disclosed to it by Shaw or ECOMMQUEST; and (c) requiring

ECOMMQUEST and EY to destroy, with proof to the satisfaction of the Court, all of WCS's

confidential information that has been used or disclosed by ECOMMQUEST or EY;

     5.    That Plaintiff be awarded its reasonable attorney's fees and costs incurred

herein;

     6.    That Plaintiff be awarded its pre- and post-judgment interest; and

     7.    That Plaintiff be awarded such other and further relief as to the Court may

deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury of not less than 12 persons as to all triable issues to

a jury in this matter.

DATED this 16th day of April, 2019.

Respectfully submitted,

HOPKINS RODEN CROCKETT
HANSEN & HOOPES, PLLC

By:   /s/ Sean J. Coletti
     Sean J. Coletti
     Attorneys for Plaintiff

COMPLAINT - 10

# Confidentiality and Proprietary Rights Agreement

This Employee Confidentiality and Proprietary Rights Agreement ("Agreement") is entered into by and between WCS Consulting, LLC, a subsidiary of Working Capital Services, LLC, with principal offices at 1020 N. Hickory Ave, Suite 100, Meridian, ID 83642, (the "Employer") and _Daniel Shaw_ (the "Employee") (the Employer and the Employee are collectively referred to herein as the "Parties") as of _1/18/2017_ (the "Effective Date").

In consideration of the Employee's employment by the Employer, which the Employee acknowledges to be good and valuable consideration for his/her obligations hereunder, the Employer and the Employee hereby agree as follows:

1.    Confidentiality and Security.

   (a)    Confidential Information

   The Employee understands and acknowledges that during the course of employment by the Employer, he/she will have access to and learn about confidential, secret and proprietary documents, materials and other information, in tangible and intangible form, of and relating to the Employer and its businesses and existing and prospective customers, suppliers, investors and other associated third parties ("**Confidential Information**"). The Employee further understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee might cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and criminal penalties.

   For purposes of this Agreement, Confidential Information includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases, manuals, records, articles, systems, material, sources of material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls,

*revised January 2017*

Page 1 of 8

EXHIBIT

"A"

security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, manufacturing information, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, customer lists, client information, client lists, and buyer lists of the Employer or its businesses or any existing or prospective customer, investor or other associated third party, or of any other person or entity that has entrusted information to the Employer in confidence.

   The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

   The Employee understands and agrees that Confidential Information developed by him/her in the course of his/her employment by the Employer shall be subject to the terms and conditions of this Agreement as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that such disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

  (b)  Disclosure and Use Restrictions

   The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any entity or person whatsoever (including other employees of the Employer/third party not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer and, in any event, not to anyone outside of the direct employ of the Employer except as required in the performance of the Employee's authorized employment duties to the Employer and only after execution of a confidentiality agreement by the third party with whom Confidential Information will be shared or with the prior consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such documents, records, files, media or other resources from the premises or control of the Employer, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of an authorized officer acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall be construed to prevent disclosure of

Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order. The Employee shall promptly provide written notice of any such order to an authorized officer of the Employer. In addition, this Section does not, in any way, restrict or impede the Employee from disclosing information as permitted by law.

      (c)      Duration of Confidentiality Obligations

         The Employee understands and acknowledges that his/her obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after he/she begins employment by the Employer) and shall continue during and after his/her employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2.      <u>Proprietary Rights</u>.

      (a)      Work Product

         The Employee acknowledges and agrees that all writings, works of authorship, technology, inventions, discoveries, ideas and other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived or reduced to practice by the Employee individually or jointly with others during the period of his/her employment by the Employer and relating in any way to the business or contemplated business, research or development of the Employer (regardless of when or where the Work Product is prepared or whose equipment or other resources is used in preparing the same) and all printed, physical and electronic copies, all improvements, rights and claims related to the foregoing, and other tangible embodiments thereof (collectively, **"Work Product"**), as well as any and all rights in and to copyrights, trade secrets, trademarks (and related goodwill), patents and other intellectual property rights therein arising in any jurisdiction throughout the world and all related rights of priority under international conventions with respect thereto, including all pending and future applications and registrations therefor, and continuations, divisions, continuations-in-part, reissues, extensions and renewals thereof (collectively, **"Intellectual Property Rights"**), shall be the sole and exclusive property of the Employer.

         For purposes of this Agreement, Work Product includes, but is not limited to, Employer information, including plans, publications, research, strategies, techniques, agreements, documents, contracts, terms of agreements, negotiations, know-how, computer programs, computer applications, software design, web design, work in process, databases, manuals, results, developments, reports, graphics, drawings, market

studies, formulae, notes, communications, algorithms, product plans, product designs, styles, models, audiovisual programs, inventions, unpublished patent applications, original works of authorship, discoveries, experimental processes, experimental results, specifications, customer information, client information, customer lists, client lists, manufacturing information, marketing information, advertising information, and sales information.

(b)    Work Made for Hire; Assignment

The Employee acknowledges that, by reason of being employed by the Employer at the relevant times, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter is "work made for hire" as defined in the Copyright Act of 1976 (17 U.S.C. § 101), and such copyrights are therefore owned by the Employer. To the extent that the foregoing does not apply, the Employee hereby irrevocably assigns to the Employer, for no additional consideration, the Employee's entire right, title and interest in and to all Work Product and Intellectual Property Rights therein, including the right to sue, counterclaim and recover for all past, present and future infringement, misappropriation or dilution thereof, and all rights corresponding thereto throughout the world. Nothing contained in this Agreement shall be construed to reduce or limit the Employer's rights, title or interest in any Work Product or Intellectual Property Rights so as to be less in any respect than that the Employer would have had in the absence of this Agreement.

(c)    Further Assurances; Power of Attorney

During and after his/her employment, the Employee agrees to reasonably cooperate with the Employer at the Employer's expense to (i) apply for, obtain, perfect and transfer to the Employer the Work Product as well as an Intellectual Property Rights in the Work Product in any jurisdiction in the world; and (ii) maintain, protect and enforce the same, including, without limitation, executing and delivering to the Employer any and all applications, oaths, declarations, affidavits, waivers, assignments and other documents and instruments as shall be requested by the Employer. The Employee hereby irrevocably grants the Employer power of attorney to execute and deliver any such documents on the Employee's behalf in his/her name and to do all other lawfully permitted acts to transfer the Work Product to the Employer and further the transfer, issuance, prosecution and maintenance of all Intellectual Property Rights therein, to the full extent permitted by law, if the Employee does not promptly cooperate with the Employer's request (without limiting the rights the Employer shall have in such circumstances by operation of law). The power of attorney is coupled with an interest and shall not be effected by the Employee's subsequent incapacity.

(d)    Moral Rights

To the extent any copyrights are assigned under this Agreement, the Employee hereby irrevocably waives, to the extent permitted by applicable law, any and

all claims the Employee may now or hereafter have in any jurisdiction to all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as "moral rights" with respect to all Work Product and all Intellectual Property Rights therein.

(e)     No License

The Employee understands that this Agreement does not, and shall not be construed to, grant the Employee any license or right of any nature with respect to any Work Product or Intellectual Property Rights or any Confidential Information, materials, software or other tools made available to him/her by the Employer.

3.     Security.

(a)     Security and Access

The Employee agrees and covenants (i) to comply with all Employer security policies and procedures as in force from time to time ("**Facilities Information Technology and Access Resources**"); (ii) not to access or use any Facilities and Information Technology Resources except as authorized by Employer; and (iii) not to access or use any Facilities and Information Technology Resources in any manner after the termination of the Employee's employment by the Employer, whether termination is voluntary or involuntary. The Employee agrees to notify the Employer promptly in the event he/she learns of any violation of the foregoing by others, or of any other misappropriation or unauthorized access, use, reproduction or reverse engineering of, or tampering with any Facilities and Information Technology Access Resources or other Employer property or materials by others.

(b)     Exit Obligations

Upon (i) voluntary or involuntary termination of the Employee's employment or (ii) the Employer's request at any time during the Employee's employment, the Employee shall (a) provide or return to the Employer any and all Employer property and all Employer documents and materials belonging to the Employer and stored in any fashion, including but not limited to those that constitute or contain any Confidential Information or Work Product, that are in the possession or control of the Employee, whether they were provided to the Employee by the Employer or any of its business associates or created by the Employee in connection with his/her employment by the Employer; and (b) delete or destroy all copies of any such documents and materials not returned to the Employer that remain in the Employee's possession or control, including those stored on any non-Employer devices, networks, storage locations and media in the Employee's possession or control.

4.     Non-Disparagement. The Employee agrees and covenants that he/she will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the

Employer's products or services, and existing and prospective customers, suppliers, investors and other associated third parties, or make any maliciously false statements about the Employer's employees and officers.

5.    Acknowledgement. The Employee acknowledges and agrees that the services to be rendered by him/her to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business and marketing strategies by virtue of the Employee's employment; and that the terms and conditions of this Agreement are reasonable under these circumstances. The Employee further acknowledges that the amount of his/her compensation reflects, in part, his/her obligations and the Employer's rights under this Agreement; that he/she has no expectation of any additional compensation, royalties or other payment of any kind not otherwise referenced herein in connection herewith; that he/she will not be subject to undue hardship by reason of his/her full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time. Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the "at-will" status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, with or without notice.

6.    Remedies. In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

7.    Successors and Assigns.

    (a)    Assignment by the Employer

        The Employer may assign this Agreement to any subsidiary or corporate affiliate, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer and permitted successors and assigns.

    (b)    No Assignment by the Employee

*revised January 2017*                                                                 Page 6 of 8

The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

8.      Arbitration. Any dispute, controversy or claim arising out of or related to this Agreement or any breach of this agreement shall be submitted to and decided by binding arbitration. Arbitration shall be administered exclusively by JAMS and shall be conducted consistent with the rules, regulations and requirements thereof. Any arbitral award determination shall be final and binding upon the Parties. In the event that this Agreement becomes subject to arbitration, the Parties agree that the prevailing Party shall be entitled to an award of attorney's fees, costs, and the prevailing statutory interest from the other Party.

9.      Governing Law; Jurisdiction and Venue. This Agreement, for all purposes, shall be construed in accordance with the laws of Idaho without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of Idaho. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defence of inconvenient forum to the maintenance of any such action or proceeding in such venue.

10.     Entire Agreement. Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

11.     Modification and Waiver. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by a DULY AUTHORIZED OFFICER of the Employer (other than the Employee). No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

12.     Severability. Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement. The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this

Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law. The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

13.   _Captions_. Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

14.   _Counterparts_. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date above.

| WCS Consulting, LLC | |
|---|---|
| By _[signature]_ | By _[signature]_ |
| Name:  John Bisaro | Print Name:  Daniel Shaw |
| Title:  Partner | |